UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HOWARD MILLS, Superintendent of Insurance
of the State of New York as Rehabilitator of
Frontier Insurance Company                                                  PLAINTIFF

v.                                                  CIVIL ACTION NO. 3:05CV534-S

BROOK SMITH, et al.                                                  DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendants, Brook Smith, et al., to dismiss the amended complaint (DN 17). For the reasons set forth herein, the motion will be granted and this action dismissed.

When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The following facts, taken from the Amended Complaint, will be taken as true for purposes of this opinion.

Frontier is a New York specialty insurance carrier, with its principal place of business in New York. It is now insolvent and in rehabilitation pursuant to a New York court order. Amended Complaint ("AC"), ¶¶ 1, 12. The plaintiff, Howard Mills, is the rehabilitator appointed by the New York court, pursuing this action on behalf of Frontier. AC, ¶¶ 10, 11. Defendants Brook Smith and James T. Smith are Kentucky residents. AC, ¶¶ 13, 19. James T. Smith owned and operated Smith-Manus Agency, Inc., a Kentucky corporation with its principal place of business in Louisville, Kentucky. AC, ¶ 14. Brook Smith, son of James T. Smith, was employed by Smith-Manus. AC,

¶¶ 13, 33. The other named corporate defendants are various entities owned and operated by the Smiths. AC, ¶¶ 13-18.

Smith-Manus entered into an agency agreement with Frontier on December 6, 1994 for the underwriting of reclamation and other surety bonds on behalf of Frontier. AC, ¶¶ 20, 25. The agreement required Smith-Manus to comply with the rules and regulations of Frontier and to follow the requirements in Frontier's Underwriting Guide. AC, ¶ 21. In conjunction with the Agency Agreement, James T. Smith signed a personal guarantee by which Smith guaranteed the performance of Smith-Manus Agency, its officer, employees, agents and subagents. AC, ¶¶ 29, 30.

During 1997 and 1998, Brook Smith was acting under the Agency Agreement as an employee of Smith-Manus. He developed both a personal and business relationship with David Campbell, an officer of Frontier. On October 13, 1997, Brook Smith recommended acceptance of the application of Centennial Resources, Inc. and its related companies for various reclamation and related miscellaneous bonds for its Kentucky mining operations. AC, ¶¶ 38, 43. Without performing a proper, thorough, and meaningful analysis of Centennial and its principals, he recommended the application of Centennial as an "excellent risk," in a letter dated October 13, 1997. AC, ¶¶ 39-45. At the time of the recommendation, Centennial was in poor financial condition, having been in business only seven months and having lost approximately $4.5 million. AC, ¶ 46. He made representations to Frontier that he knew or should have known were false and misleading. AC, ¶¶ 46, 54.

In February, 1998, $24.5 million in bonds were issued to Centennial. Additional bonds were issued over the next several months. Over 160 Frontier bonds were issued to Centennial totaling over $29 million. AC, ¶ 60. No personal guarantee or indemnity agreements were obtained in connection with these bond issues. AC, ¶ 62. In lieu of typical premiums, Frontier and Centennial agreed that the Frontier bonds would be issued in exchange for an ownership interest in Centennial

up to 469 shares of common stock at a value equal to $800,000. AC, ¶ 63. No stock certificates were delivered to Frontier. AC, ¶ 65.

In October, 1998, Centennial filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware. On August 11, 1999 Centennial informed Frontier that it would be responsible for the payment of the Centennial bonds. Frontier made its first reclamation payments on the Centennial bonds in June, 2000.

During the mid to late 1990s, the defendants developed relationships with other mining entities including Addington Enterprises, Inc., AEI Holding Company, Inc. and Quaker Coal Companies. Brook Smith underwrote approximately $60 million in reclamation and surety bonds for Quaker without obtaining personal guarantee or indemnity agreements. AC, ¶¶ 72, 73. The defendants failed to inform Frontier of the unacceptable risks presented by the issuance of bonds to these financially unstable mining operations. AC, ¶¶ 74-77. Quaker and AEI filed Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Eastern District of Kentucky in 2000 and 2002 respectively. AC, ¶¶ 78, 80.

The defendants contend that Counts I through IV must be dismissed as time-barred under the applicable statutes of limitation. We will address the timeliness of the claims *seriatim*.

Count I alleges breach of the Agency Agreement. The agreement contains the provision that it be "interpreted and enforced pursuant to the laws of the state of New York..." Agency Agreement, p. 7.

As this is a diversity action, the court must apply the choice of law rules of Kentucky, the forum state. *Westfield Insurance Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003)(*citing, Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001)(*citing, Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The United States Court of Appeals for the Sixth Circuit has held that "in a standard commercial breach-of-contract case...the Kentucky courts would choose to adopt § 187 of the Restatement [2d of Conflict of Laws]

as their analytical framework for addressing a contractual choice-of-law clause." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 397 (6th Cir. 2000). While the general proposition in this jurisdiction is that "contractual choice-of-law clauses incorporate only substantive law, not procedural provisions such as statutes of limitation," *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998), the Sixth Circuit has also recognized that the parties may provide otherwise. *Id.* ("*Absent an express statement that the parties intended another state's limitations statute to apply*, the procedural law of the forum governs time restrictions on an action for breach...")(emphasis added). In this instance, the choice-of-law provision states that the agreement is to be interpreted and enforced pursuant to the laws of New York. The plain meaning of the term "enforced," used in addition to the term "interpreted," necessarily includes application of the New York statutes of limitation which are integral to the question of enforceability. To find otherwise would emasculate the term "enforced" in the contract provision.

We next conclude that under § 187 of the Restatement 2d of Conflict of Laws this choice of law provision would be enforced. Under § 187(2), a choice-of-law clause will be enforced unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

There is nothing contrary to the fundamental policy of Kentucky in applying New York law in this instance. Frontier is a New York corporation in rehabilitation in New York. It contends that Kentucky has more significant interests in the litigation because the defendants are located here and because reclamation of abandoned mine sites must be done here. It is important to note that Frontier does not represent the interests of Kentucky mines in this litigation. Rather, the rehabilitator seeks to garner assets for the bankrupt corporation. As between the states' interests, the court cannot

conclude that Kentucky has a greater interest in this breach of contract claim than New York. Therefore, the clause will be enforced.

As New York has a six-year statute of limitations for claims "upon a contractual obligation or liability, express or implied..." N.Y.C.P.L.R. § 213(2) (McKinney 2006), Count I of the complaint is time-barred. There are numerous allegations of acts constituting breaches of the Agency Agreement. Mills alleges that the defendants failed to follow the procedures in the Frontier Underwriting Guide, compliance with which was specifically required by the Agency Agreement. Agency Agreement, p. 1. Many of the alleged acts of non-compliance would have been apparent to Frontier at the time of the issuance of the bonds in 1997 and 1998. For example, failure on the part of the defendants to obtain "appropriate corporate and personal indemnity... *prior to* the delivery of the bond" (Frontier Underwriting Guide, p. 1)(emphasis added) was clearly apparent or readily discoverable at the time of the issuance. There is no dispute that New York does not apply a "discovery rule" for contract claims. *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985 (N.Y. 1993). At the very least, Frontier had notice on August 11, 1999 when it was notified that it would be required to pay the bonds issued to the now-bankrupt Centennial. Frontier certainly should have discovered that it had significant problems upon this August notification. As the claims on the contract were not brought until September 19, 1999, they are time-barred.

Count II alleges breach of fiduciary duty. Count III alleges aiding and abetting a breach of fiduciary duty. Count IV alleges fraudulent inducement.

Counts II and III are time-barred, as Frontier knew or should have known no later than August 11, 1999 of the facts underlying its fiduciary duty claims. Notice that it would be required to pay millions of dollars on bonds issued no more than a year and a half earlier should have prompted discovery of the wrongful conduct, in the exercise of due diligence. *See, Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406 (6th Cir. 2002), *citing, Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 641 (6th Cir. 1986); *Hazel v. General Motors Corp.*, 863 F.Supp. 435, 438 (W.D.Ky.

1994)("Under the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct."). The five-year statute of limitations applies in this case to bar Counts II and III alleging breach of fiduciary duty. KRS 413.120(1). *See, Ingram v. Cates*, 74 S.W.3d 783 (Ky.App. 2002).[1] As Frontier knew or should have been alerted to potential claims on August 11, 1999, the statute of limitations on Frontier's claims ran five years after that date.

Similarly, Count IV alleging fraudulent inducement is time-barred by the five-year statute of limitations. KRS 413.120. Frontier cannot reach beyond August 11, 1999 to extend the time in which it was required to file suit. Despite the claim that the defendants fraudulently concealed the significant risks of which they were aware in order to induce Frontier to issue the bonds in question, on August 11, 1999 it knew to a level certainty that something was terribly wrong with its risk management decisions. Frontier cannot rely on its allegation that it "first began seeing problems in the underwriting of the Centennial bonds in 2003, when it began requesting copies of various bonds and underwriting files from the Defendants." AC, ¶ 69. This allegation states that actual discovery of fraud occurred sometime in 2003. The issue here, however, is when, in the exercise of due diligence, the fraud ought to have discovered. Upon notice in August, 1999, the fraud should have been discovered and suit filed within five years from that time. As the claim was not brought until September, 2005, the claim is time-barred.

The court having dismissed Count I as barred by the applicable New York statute of limitations, Count V is also time-barred. Count V seeks to enforce the indemnity provision of the Agency Agreement against Smith-Manus and James T. Smith. As this amounts to a contract claim, it is barred under the reasoning of the court in dismissing Count I. Count V also seeks to enforce

---

[1] The five-year statute of limitations applies equally to a claim for aiding and abetting a breach of fiduciary duty. *Anderson v. Pine South Capital, LLC*, 177 F.Supp.2d 591, 604 (W.D.Ky. 2001).

the guarantee executed by James T. Smith contemporaneously with the Agency Agreement. Inasmuch as the guarantee states that it [the guarantee] is to be "attached and made part of the Frontier Agency Agreement...," the New York statute of limitations operates to bar this claim as well.

Count VI seeks the imposition of successor liability, a claim which does not stand alone, but rather relies upon a viable claim for liability. As no claims remain, Count VI must be dismissed.

For the reasons set forth hereinabove, all claims in the Amended Complaint will be dismissed. A separate order will be entered this date in accordance with this opinion.